**GULF OIL CORPORATION, d/b/a Gulf Oil Company—U. S. Chemicals Department, a division, Appellant,**

v.

**RICE AND AGRICULTURAL CO-OP, INC., a.k.a. and d/b/a Rice & Agricultural Co-Op, Inc. and Rice & Agri. Co-op, Inc., Appellee.**

No. 16619.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 1, 1976.

Rehearing Denied April 29, 1976.

Lapin, Totz & Mayer, William A. Petersen, Jr., Houston, for appellant.

McNeal, Thrash & Williams, William W. McNeal, Alvin, for appellee.

PEDEN, Justice.

Gulf Oil brought this suit on a sworn account against the Rice and Agricultural Co-op, Inc. One of the principal issues on appeal is whether the arrangement between the parties amounted to a completed sale of some fertilizer, a consignment, or a sale or return.

The Co-op filed a sworn denial that the claim was just, a counter-claim for storage expenses and costs of sales resulting from Gulf's failure to accept the return of the goods, and these allegations:

3.

". . . Defendant was a dealer for Plaintiff in the sale of certain merchandise which Plaintiff furnished to Defendant under an agreement and arrangement known as a dated billing program. Under said dated billing program, Plaintiff was obligated to and agreed to accept merchandise to be returned by Defendant in the event that Defendant did not wish to continue to attempt to sell same to the public generally, at retail. The account set out in Plaintiff's Original Petition is an account referring to goods originally held by Defendant under said dated billing program. It is alleged that the agreement and understanding between the parties was that Defendant should be a consignee of Plaintiff's products and would hold same in Defendant's warehouse subject to sale. At the time of each dated billing period, an inventory would be made of the products sold by Defendant and Plaintiff would, thereafter, invoice Defendant for the purchase price of the goods actually sold by Defendant to the public generally, at retail.

4.

"On or about December 9, 1970, Defendant notified Plaintiff, in writing that Defendant had lost its storage warehouse and did not have space in its own warehouse to store the goods held under consignment. Defendant requested that Plaintiff pick up said goods as soon as possible. Although, under the terms of the agreement and understanding be-

tween the parties, Plaintiff was obligated to do so, Plaintiff failed and refused to pick up the said goods. Because of Plaintiff's failure and refusal to do so, it was necessary for Defendant to move said goods to another location and store same, at Defendant's expense. The goods and merchandise so stored became reduced in value during the ensuing months and Defendant was unable to sell same for the list price. The merchandise was continuing to deteriorate and decrease in value and, in order to mitigate its damages and that of Plaintiff, Defendant was required to and did dispose of same for the best price obtainable. All amounts received for the sale of said merchandise were forwarded to Plaintiff and, in fact, Plaintiff has been paid more money, in total, than the amounts due on account to Plaintiff for merchandise sold prior to said notification and all amounts received for the sale of said merchandise, at reduced prices, subsequent to the delivery of said notice to Plaintiff. It is alleged that all of said merchandise sold by Defendant was sold for a fair price which amounted to the market value of said merchandise and was a reasonable price, under the circumstances."

The jury made these findings:

1) There was an agreement that the Co-op could return any unsold merchandise to Gulf. This instruction was given:

"In connection with the foregoing Special Issue, you are instructed that 'agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealings or usage of trade or course of performance."

2) The Co-op requested permission to return fertilizer to Gulf.

3) Such request was made on December 9, 1970.

4) Gulf refused to accept return of the goods.

5) The Co-op acted in good faith in caring for and handling the fertilizer.

6) The Co-op received $12,443.52 for the sale of Gulf fertilizer from and after January 8, 1971.

7) The sum of money which would fairly and reasonably compensate the Co-op for caring for and selling the fertilizer from and after January 8, 1971 was $7,328.20.

8) Nothing was paid to Gulf by the Co-op for 'goods on hand' on January 8, 1971, and thereafter.

9) The Co-op owes Gulf Oil $2,811.66 for the merchandise in question.

10) Reasonable compensation for the plaintiff for its attorney's fee is zero.

The trial court granted the Co-op's motion to disregard the answers to Special Issues 8 and 9 and entered judgment that Gulf Oil recover $115.32 from the Co-op.

Appellant urges forty-nine points of error. Its first twenty-eight points complain that the trial court erred in submitting Special Issues 1 through 7 because there was no evidence or insufficient evidence, because the issues and the jury's answers to them were against the great weight and preponderance of the evidence, and because there were no pleadings to support their submission to the jury. We overrule the great weight points. A trial judge does not err by submitting an issue whose answer is against the great weight of the evidence. He must submit it; he may, after verdict, grant a new trial.

Mr. Boyer, a Gulf salesman, began dealing with the Co-op through its manager, James Harvell. They agreed in 1969 that the Co-op would take delivery of some Gulf fertilizer for resale. Under an arrangement called a "dated billing program", Gulf delivered and stored it in a warehouse operated by the Co-op. The parties agreed that at each dated billing period an inventory would be taken and Gulf would bill the Co-op for the fertilizer it had sold since the last billing period but that the Co-op would not be billed for any fertilizer still on hand.

Gulf says this transaction was a completed sale with a financing arrangement whereby Gulf would not charge the pur-

chase price or interest until the Co-op sold the fertilizer but that if the Co-op failed to pay the billed amount within thirty days, the purchase price of the fertilizer in inventory also became due. Gulf says the billing statement of account called a "redating form" merged their agreement into an integrated contract.

■ We disagree. The redating form did not purport to be complete or to state the entire agreement of the parties. The signature of Co-op's representative shows, at most, a verification of the accuracy of the values of the fertilizer sold and of the goods on hand. Gulf did not allege a written contract, and the evidence shows that the agreement between the parties was never reduced to writing.

It appears that the arrangement may be considered either as a consignment or as a "sale or return" as provided in Section 2.326, Tex.Bus. & Comm.Code:

"(a) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

". . .

(2) a 'sale or return' if the goods are delivered primarily for resale.

". . .

(Omitted portions deal with determination of creditor's rights.)

"(d) Any 'or return' term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this chapter (Section 2.201) and as contradicting the sale aspect of the contract within the provisions of this chapter on parol or extrinsic evidence (Section 2.202)."

■ Since the entire agreement was oral we do not consider applicable the statute of frauds provision in subsection (d) above. Further, Gulf did not plead the statute of frauds and did not object to evidence of the oral agreement. Section 2.326 is primarily concerned with the protection of other creditors of the buyer, a matter not at issue here.

Section 2.327 provides:

"(a) . . .

"(b) Under a sale or return unless otherwise agreed

(1) the option to return extends to the whole or any commercial unit of the goods while in substantially their original condition, but must be exercised seasonably; and

(2) the return is at the buyer's risk and expense."

■ We overrule Gulf's points of error complaining of the first five special issues and of the jury findings in response to them. Although Mr. Martel, Gulf's credit manager, and Mr. Boyer, who was Gulf's salesman when the arrangement was initiated with the Co-op, testified that the agreement amounted to a sale, not a consignment, and that Gulf did not agree to let the Co-op return unsold fertilizer, we hold that the Co-op's pleadings and the evidence presented by Mr. Harvell, general manager of the Co-op from 1964 to July, 1970, of Mrs. Krueger, and of Mr. Peltier amply support the submission of the first five issues and the jury's answers to them.

The Co-op's witnesses testified that the Gulf representative, Mr. Boyer, agreed that Gulf would pick up any unsold goods or goods the Co-op didn't want, just as the other fertilizer companies had agreed to do. They also related that when the Co-op lost its fertilizer warehouse, in December, 1970 it asked Gulf to come and pick up the fertilizer but Gulf didn't do it, so the Co-op had to move and store it in late January, 1971, at its own expense. The Co-op's officers decided to sell the fertilizer at the best price obtainable and offered to remit this amount to Gulf less any expenses incurred.

■ The Co-op had received the fertilizer as late as August of 1970, and the agreement that Gulf would pick up unwanted goods did not provide a time limit. We cannot say the time passage was unreasonable, and must presume in support of the judgment that the trial court found it reasonable. The appellant requested no issue or explanatory instruction in substantially correct wording on this matter at any ap-

propriate place in the charge. Rule 279, Texas Rules of Civil Procedure.

The jury findings show that Gulf breached the covenant to return the fertilizer and it is uncontroverted that Gulf gave no instructions with respect to it. We consider applicable these sections of the Business and Commerce Code:

"Section 2.603 Merchant Buyer's Duties as to Rightfully Rejected Goods

"(a) Subject to any security interest in the buyer (Subsection (c) of Section 2.711), when the seller has no agent or place of business at the market of rejection a merchant buyer is under a duty after rejection of goods in his possession or control to follow any reasonable instructions received from the seller with respect to the goods and in the absence of such instructions to make reasonable efforts to sell them for the seller's account if they are perishable or threaten to decline in value speedily. Instructions are not reasonable if on demand indemnity for expense is not forthcoming.

"(b) When the buyer sells goods under Subsection (a), he is entitled to reimbursement from the seller or out of the proceeds for reasonable expenses of caring for and selling them, and if the expenses include no selling commission then to such commission as is usual in the trade or if there is none to a reasonable sum not exceeding ten per cent on the gross proceeds.

"(c) In complying with this section the buyer is held only to good faith and good faith conduct hereunder is neither acceptance nor conversion nor the basis of an action for damages."

"Section 2.604 Buyer's Options as to Salvage of Rightfully Rejected Goods

"Subject to the provisions of the immediately preceding section on perishables if the seller gives no instructions within a reasonable time after notification of rejection the buyer may store the rejected goods for the seller's account or reship them to him or resell them for the seller's account with reimbursement as provided in the preceding section. Such action is not acceptance or conversion."

Gulf next complains, in points 21 through 24 about the submission of Special Issue No. 6. The jury's answer was that the Co-op received $12,443.52 from its sales of Gulf fertilizer after January 8, 1971.

Mr. Walter Sensat, manager of the Co-op's successor company, managed the Co-op before it was sold in 1973. He testified from the Co-op's business records that $8,592.56 was the corrected figure of the sales of the left-over Gulf fertilizer and that $3,697.09 was received from another sale of fertilizer; he didn't know whether or not it was Gulf fertilizer, but it had the same chemical analysis as Gulf's. He said ten percent was a normal sales commission. The jury was entitled to disagree with his testimony that one $154 item should be excluded; if that item is added, the jury's answer of $12,443.52 is only thirteen cents less than a total of the three figures just mentioned. We overrule these points.

Gulf says in points 25 through 28 that the trial court erred in submitting Special Issue No. 7 because the evidence does not support it. The issue asked what sum would reasonably compensate the Co-op for caring for and selling the fertilizer on and after January 8, 1971. We hold that the evidence amply supports the submission of the issue. Gulf's point 35 also refers to Issue 7. It is: "The court erred in overruling paragraph II of the Plaintiff's motion to disregard jury findings." We will consider this point even though it is multifarious in that it contains several different complaints. We agree with one of Gulf's complaints about the jury's answer of $7,328.20 to Issue No. 7: it is excessive.

Mr. Peltier, a director of the Co-op in 1969 testified that the Co-op had to store its seed rice in a rented warehouse because the fertilizer took up the Co-op's space. The prevailing storage charge in that area was $4 per ton for three months and the prevailing rate for hauling was $3 to $3.50

per ton. He said some of the fertilizer deteriorated so badly it had to be discarded.

The evidence supports these figures:

| | |
|---|---|
| Storage charges | $4,080.00 |
| Hauling charges @ $3.50 | 710.50 |
| Sales commission @ 10% | 1,244.35 |
| | $6,034.85 |

We do not agree with the Co-op's argument that it should recover the $1,557.20 its witness testified it had to spend for storing its seed rice elsewhere. To do so would permit a double recovery since we have included a storage charge for the fertilizer. We find that the jury's answer of $7,328.20 to Issue No. 7 is excessive by $1,293.35.

Gulf complains that the evidence does not support the jury's answer to Special Issue No. 9. The trial judge disregarded that answer, so these points do not present error.

Points 32 and 33 are insufficient evidence and great weight points directed to the jury's denial of an attorney's fee to Gulf in response to Issue 10. Point 37 is that the trial court should have disregarded that finding, and Point 41 asserts that Gulf is entitled to recover an attorney's fee of $2,500.

■ We overrule these points. Gulf's prayer for an attorney's fee is based on Art. 2226, V.T.C.S., which authorizes recovery of a reasonable amount upon a valid claim. The jury did not find Gulf's claim to be valid. Gulf's recovery is, instead, based on the amount the Co-op received for salvaging the fertilizer for Gulf. Gulf cannot recover an attorney's fee on the jury's findings that Gulf violated its agreement to accept the returned fertilizer.

Gulf's thirty-fourth point of error is that the trial court erred in refusing to submit this offered special issue:

"If you have answered Special Issue No. 2 'We do' and only in that event, then answer:

SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that Gulf refused to accept return of the goods?

"In connection with the above issue you are instructed that the return extends to the whole or any commercial unit of the goods while in substantially their original condition, but must be returned seasonably at the buyer's risk and expense. An action is taken 'seasonably' when it is taken at or within the time agreed or if no time is agreed at or within a reasonable time."

■ Gulf is complaining, in effect, of the trial judge's refusal to submit the offered instruction; he submitted Special Issue No. 4 as requested, but not the instruction. The instruction appears to be an excerpt from Section 2.327(b)(1) of the Texas Business & Commerce Code plus a statement that the goods must be returned seasonably and a definition of "seasonably" as in Sec. 1.204 of the Code. We hold that the trial judge did not err in refusing to submit the instruction as a part of Issue 4. It would not have been useful to the jury as a guide in answering that issue.

We also overrule Gulf's points of error 38 through 40 and point 42. They complain of the trial court's having overruled Gulf's paragraphs 6 through 8 and 10 of its motion to disregard the jury's answers. Those paragraphs contain arguments that are merely repetitious of earlier points and are multifarious, as are points 43 through 45.

Point of error 46 is that the trial court erred in granting Gulf a judgment in the amount of only $115 since it was entitled, as a matter of law, to recover $10,139.86.

It is uncontroverted that the Co-op paid Gulf $5,000 by check on May 3, 1972, so the trial court was correct in disregarding the jury's zero answer to Special Issue No. 8, which asked how much the Co-op paid Gulf after January 8, 1971, for goods on hand.

The trial judge apparently based his judgment on this computation:

| | | |
|---|---|---|
| Received by Co-op after 1–8–71 from sale of Gulf goods (answer to Issue 6): | | $12,443.52 |
| Amount due Co-op for services rendered after 1–8–71 (answer to Issue 7): | $7,328.20 | |
| Amount paid by Co-op after 1–8–71: | 5,000.00 | |
| Amount due Gulf from Co-op | | −12,328.20 |
| | | $ 115.32 |

We have held in response to Point 35 that the jury's answer to Issue 7 is excessive by $1,293.35, so the amount due to the Co-op for services must be reduced and Gulf's recovery increased by that amount, to $1,408.67.

Gulf complains in Point 47 about the trial court's having taxed half of the costs against Gulf. The trial court did not state on the record any cause under Rule 141, Tex.R.C.P., for adjudging the costs as he did. We hold that costs in the trial court should have been taxed against the Co-op.

Gulf's last two points complain that it should have been awarded interest on the judgment from the date the account became due instead of from the date of the judgment. We overrule them. Under the facts of this case Gulf did not show that the account came due, so Gulf's recovery of interest is not determined by a provision in the dated billing form or by the rule applied to suits on open accounts, Art. 5069–1.03, V.T.C.S.; the trial court correctly awarded interest from the date of judgment in accordance with Art. 5069–1.05. The amount of Gulf's damages was unliquidated.

The judgment of the trial court is amended to increase the appellant's recovery to $1,408.67 and to tax trial court costs against the Co-op; as amended, the judgment is affirmed.